**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-01120-CMA-KLM

ALEXANDER NOEL GARCIA,

    Plaintiff,

v.

ADAMS COUNTY,
ADAMS COUNTY COMMISSIONERS,
ADAMS COUNTY SHERIFF'S OFFICE,
ADAMS COUNTY DETENTION FACILITY,
LAWS, Adams County Deputy, Chief,
J. SPILLIS, Adams County Deputy,
WELLPATH,
D. WEATHERMAX,
MATTHEW GILLESPIE,
MAX,
UNKNOWN NURSES,
UNKNOWN DOCTORS,

    Defendants.

---

**ADAMS COUNTY DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT [ECF 14]**

---

Mr. Garcia, a pretrial detainee housed in the Adams County Detention Facility, asserts a *pro se* Section 1983 claim against several Adams County Defendants[1] along with various private and other governmental actors. Mr. Garcia's claim arises out of the

---

[1] Mr. Garcia originally sued 15 Adams County entities, officials, or employees. After the Magistrate Judge's Recommendation [ECF 22] and the Court's Order adopting that Recommendation [ECF 41] only six Adams County Defendants remain: "Adams County," the Adams County Commissioners, the Adams County Sheriff's Office, the Adams County Detention Facility, Adams County Division Chief Laws, and Adams County Deputy Spillis.

1

Adams County Detention Facility's refusal to provide him with a continuous positive airway pressure (CPAP) machine at county expense during the period of his pretrial incarceration. Mr. Garcia alleges this refusal violates his Fifth and Fourteenth Amendment rights to be free from deliberate indifference to his serious medical condition.

Mr. Garcia's allegations, however, fail to state a claim against the Adams County Defendants as a matter of law. In addition, those Adams County Defendants who are individuals – namely Division Chief Laws and Deputy Spillis – have qualified immunity from suit in their individual capacity. As such, the Adams County Defendants move to dismiss Mr. Garcia's amended complaint [ECF 14] with prejudice under Fed. R. Civ. P. 12(b)(6).

## CERTIFICATION PURSUANT TO D.C.COLO.LCivR. 7.1

D.C.COLO.L.CivR. 7.1(b)(1) and (b)(2) provide an exception to the rule to confer for motions filed under Fed. R. Civ. P. 12 and for cases involving *pro se* prisoners.

## FACTUAL ALLEGATIONS

In this case, as relevant to the Adams County defendants, Mr. Garcia alleges that:

(1) Mr. Garcia is currently a pretrial detainee housed in the Adams County Detention Facility located in Brighton, Colorado. (ECF 14, Am. Compl. at 3, § A.)

(2) In February 2021, Mr. Garcia was initially detained on an Adams County warrant. (ECF 14, Am. Compl. at 10, ¶ 2.)

(3) While being detained on the warrant, a non-party medical provider, Denver Health, treated Mr. Garcia with a breathing machine due to respiratory issues. (*Id.* at 10, ¶ 2.)

(4)     Upon his eventual arrival at the Detention Facility, Well Path assessed Mr. Garcia's medical condition and prescribed oxygen to address his respiratory issues. (*Id.* at 10, ¶ 2.)

(5)     Mr. Garcia alleges that he also suffers from a preexisting respiratory issue of obstructive sleep apnea. (*Id.* at 10, ¶¶ 1 & 2.)

(6)     During Mr. Garcia's subsequent incarceration at the Adams County Detention facility, the Detention Facility gave him oxygen and then a Millennium M10 oxygenator in accordance with Well Path's prescription. (*Id.* at 10-11, ¶ 3.)

(7)     Mr. Garcia conclusorily asserts that the use of oxygen instead of a CPAP machine is inadequate medical treatment for Mr. Garcia's medical condition and renders him susceptible to COVID-19. (*Id.* at 10, ¶ 2; 11, ¶ 1; 12, ¶ 2.)

(8)     The Detention Facility eventually put Mr. Garcia in a cell with power that could accommodate a personally-provided CPAP machine. (*Id.* at 12, ¶ 2.)

(9)     Mr. Garcia formerly had a CPAP machine, but he lost it at some point prior to his current incarceration and does not own another CPAP machine. (*Id.* at 10, ¶ 2; 11, ¶ 4; 12, ¶ 3.)

(10)    Neither Mr. Garcia nor his family can afford a new CPAP machine. (*Id.* at 11, ¶ 5.)

(11)    The Detention Facility has a policy not to provide CPAP machines to prisoners at county expense. (*Id.* at 10, ¶¶ 1 & 2; 11, ¶¶ 2-5.)

(12)    Despite filing various requests and grievances, various Adams County Defendants declined to depart from the CPAP policy and provide Mr. Garcia with a CPAP

machine at county expense. (*Id.* at 11, ¶¶ 3, 4, 5; 12, ¶¶ 1-4.)

## LEGAL STANDARD

Rule 8 requires complaints to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A complaint must include sufficient factual allegations to "state a claim to relief that is plausible on its face." *Id.* (quotation omitted). To overcome a motion under Rule 12(b)(6), the plaintiff's allegations should "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A pro se litigant's pleadings "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A pro se plaintiff's "unfamiliarity with pleading requirements" is not a basis for dismissal, but it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.* Dismissal of a pro se complaint under Rule 12(b)(6) is proper "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend*." Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999).

## ARGUMENT

To prevail on a claim under 42 U.S.C. § 1983, Mr. Garcia must allege that (1) some "person" within the meaning of the statute (2) acting under "color of law" (3) has proximately caused (4) the deprivation of one of his federal rights. *See West v. Atkins*,

4

487 U.S. 42, 48 (1988). Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). As such, the factors necessary to establish a Section 1983 claim will vary with the constitutional provision at issue. *See Iqbal*, 556 U.S. at 676 (so holding in the analogous *Bivens* context). Moreover, where qualified immunity is raised, the plaintiff must further establish that the constitutional rights at issue were clearly established at the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Although qualified immunity may be considered before assessing a plaintiff's claim, qualified immunity (if applicable) bars a suit even where a plaintiff otherwise sufficiently pleads a Section 1983 claim. *See Butler v. Bd. of Cty. Comm'rs for San Miguel Cty.*, 920 F.3d 651, 655 (10th Cir. 2019).

Here Mr. Garcia asserts one Section 1983 claim but he does so under several constitutional provisions—the Fifth and Fourteenth Amendments.[2] Additionally, although not labeled as such, he attempts to assert a claim against Adams County under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), involving the Adams County Sheriff's policy to not provide CPAP machines at county expense. Mr. Garcia's Section 1983 claim fails, however, because he does not identify the proper "person" for his *Monell* claim. But even if he had pled the proper party, the *Monell* claim, along with the claim against the individual Adams County Defendants fail to state a viable constitutional violation under either the

---

[2] The Court has already rejected Mr. Garcia's assertion of the Eighth Amendment as a separate standalone theory. *See* ECF 22 at 3-4. *See also Hoffman v. Schaetzle*, No. 19-cv-03223-WJM-KMT, 2021 WL 1300410, *7-8 (D. Colo. Feb. 12, 2021) (dismissing duplicative Eighth Amendment claim).

5

Fifth or Fourteenth Amendments. Moreover, Division Chief Laws and Deputy Spillis are entitled to qualified immunity.

### I.  The Proper Adams County Defendant for Mr. Garcia's *Monell* Claim Is Only Sheriff Richard Reigenborn in His Official Capacity

Mr. Garcia repeatedly alleges the existence of a Detention Facility policy not to provide CPAP machines to prisoners at county expense. (*Id.* at 10, ¶¶ 1 & 2; 11, ¶¶ 2-5.) Liberally construed, this is a claim arising under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, a governmental entity is only liable as a "person" under Section 1983 for policies, customs, or practices that cause the constitutional injury at issue. *Id.* at 694. Claims under *Monell* are equivalent to suits filed against government actors in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985).

Under *Monell*, the Court must determine the proper governmental entity to sue by "identify[ing] those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989). To do so, the Court looks to state constitutional and statutory law. *See McMillan v. Monroe Cty., Alabama*, 520 U.S. 781, 785-90 (1997).

Under Colorado law, Adams County is a governmental entity that exercises powers within its constitutional and statutory parameters through a board of county commissioners or various elected officials. Depending on the issue raised by the case, either the board of county commissioners or the applicable elected official in their official capacity, such as the County Sheriff, is the proper defendant in an action against the county. *See* Colo. Rev. Stat. §§ 30-11-101 &105; *Calahan v. County of Jefferson*, 429

P.2d 301, 302 (Colo. 1967); *see also Bristol v. Bd. Of Cnty. Com'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1219 (10th Cir. 2002) (County Sheriff is distinct from the board of county commissioners).

The County Sheriff, not the Board of County Commissioners, has exclusive control over policies at the Detention Facility pursuant to Colorado law. *See Sisneros v. County of Pueblo*, 2010 U.S. Dist. LEXIS 51830, *8-9 (D. Colo. May 3, 2010); Colo. Rev. Stat. §§ 17-26-101 & 102. In addition, only the County Sheriff, not the Board of County Commissioners, has "the right to supervise and control the [S]heriff's deputies" under Colorado law. *See Barrientos-Sanabria v. Lake County*, 2011 WL 650328, *6-7 (D. Colo. Feb. 11, 2011); Colo. Rev. Stat. § 30-10-506. Neither the Sheriff's Office nor the Detention Facility are suable "persons" in a Section 1983 lawsuit. *See, e.g.*, *Lounsbury v. Darr*, No. 12-cv-00362-BNB, 2012 U.S. Dist. LEXIS 33904, *3-4 (D. Colo. Mar. 14, 2012) ("Defendants Adams County Detention Facility and Adams County Sheriff's Office are improper parties to this action. The detention facility and the sheriff's department are not separate from the local government of Adams County, Colorado, and, therefore those entities are not persons subject to suit under § 1983."). Sheriff Richard Reigenborn in his official capacity is the only proper defendant to Mr. Garcia's purported *Monell* claim. As such, Adams County, the Adams County Commissioners, the Adams County Sheriff's Office, and the Adams County Detention Facility should be dismissed with prejudice because they are not proper "persons" under Section 1983 and are not responsible for

the alleged policy. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011).[3]

**II.     Mr. Garcia Does Not State a Section 1983 Claim for Violation of the Fifth Amendment.**

The Fifth Amendment to the U.S. Constitution enshrines various protections against governmental action. Mr. Garcia does not specify which provision he relies upon for his Section 1983 claim, but presumably it is the Due Process Clause. The Fifth Amendment Due Process Clause, however, is applicable only against federal actors. *See Wardle v. Ute Indian Tribe,* 623 F.2d 670, 673 (10th Cir. 1980). Thus, in Section 1983 actions, the Fifth Amendment's Due Process Clause is inapplicable because it has not been incorporated against the States. *See Washington-Pope v. City of Philadelphia*, 979 F. Supp. 2d 544, 551 n.1 (E.D. Pa. 2013). This is because the Fourteenth Amendment has its own coextensive Due Process Clause. *See Hurtado v. California*, 110 U.S. 516, 534-35 (1884). Mr. Garcia's Fifth Amendment due process claim is, therefore, not available to him as an alternative ground for relief and should be dismissed with prejudice.

**III.    Mr. Garcia Does Not State a Section 1983 Claim for Violation of the Fourteenth Amendment Against Any Adams County Defendant Because Mr. Garcia Is Not Entitled to an Elective CPAP Machine at County Expense.**

Under the Fourteenth Amendment's Due Process Clause, pretrial detainees, like Mr. Garcia, are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment. *Martin v. Board of County Comm'rs*, 909 F.2d 402, 406 (10th Cir. 1990). The Due Process Clause, therefore,

---

[3] In accordance with CMA Civ. Practice Standard 7.1D, the Adams County Defendants note that if the Court does not grant their motion to dismiss, they will move to substitute Sheriff Reigenborn in his official capacity for Adams County.

provides a cause of action for injuries caused by prison officials' "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quotation omitted). Every claim by a prisoner that he has not received adequate medical treatment, however, does not state a violation of the Eighth Amendment. *Id.* at 105.

A prisoner is not entitled to receive "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Prisoners are not entitled to the best medical care, or their choice of medical care. *See Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). Rather, they are only entitled to the medical care necessary to keep them from suffering severe illness or injury. "There is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir.2008). Thus, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999). Prison officials such as the Adams County Defendants, moreover, are not doctors—they typically serve no more than a gatekeeping function for medical treatment from trained professionals. *See Estelle*, 429 U.S. at 104-105.

The test for constitutional liability of prison officials "involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The prisoner must plausibly allege objective evidence that the deprivation at issue was in fact "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). A "medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

9

recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (quotation omitted). "Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The subjective prong of the deliberate indifference test requires the plaintiff to plausibly allege the prison official's culpable state of mind. *See Estelle*, 429 U.S. at 106. The subjective component is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference." *Farmer*, 511 U.S. at 837.

In assessing Mr. Garcia's allegations, several points should be observed. First, Mr. Garcia claims he has a sleep apnea diagnosis from a 2017 Kaiser sleep study and was approved for the use of a CPAP machine. But that is not enough to establish an objectively significant risk of harm during his incarceration in 2021. While sleep apnea can be a serious medical issue, *see Daly v. L.C.F.*, 2016 U.S. Dist. LEXIS 22712, *9-10 (W.D. Okla. Jan. 15, 2016), it is not always so. In the absence of a copy of his Kaiser sleep study, there was no reason for the Adams County Defendants to believe it was so for Mr. Garcia.[4] Further, Mr. Garcia fails to establish any fact tending to show that the

---

[4] Mr. Garcia conclusorily alleges the Adams County Defendants should have known about his medical needs from his prior incarceration at the Detention Facility in 2019. ECF 14 at 4, ¶ 1. But at that time, when Mr. Garcia filed suit in this Court, he alleged he suffered from "breathing attacks" and needed a CPAP machine (which he then had) to treat them. *See Garcia v. Hefner, et al*, No. 1:19-cv-00555-CMA-KLM, ECF 7 (Amd. Complaint at pp 7, ¶ 1). In that suit, Mr. Garcia alleged he sought, but was denied, a cell accommodation that would allow him to use the personal CPAP machine provided by his mother. (*Id.* at

Adams County Defendants had an ability or legal right to access or review his medical records. Any information related to his medical need to use a CPAP machine, assuming such information exists, would be contained in Mr. Garcia's medical records, records these defendants would have no access to. Additionally, the Amended Complaint is devoid of any allegation tending to show that the Adams County Defendants observed behavior or events involving Mr. Garcia that would suggest Mr. Garcia had a form of sleep apnea that posed a serious risk to his health or safety. And even if Mr. Garcia's assertions of a serious sleep apnea diagnoses are true, it does not follow that a CPAP machine is the only means of treating that condition. Mr. Garcia's allegation that oxygen is insufficient medical treatment is conclusory and should be disregarded under the *Iqbal* analysis. *See Iqbal*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").

Second, as for the actual medical treatment he received, his pre-incarceration medical treatment from non-party Denver Health is alleged to have involved intubation. Upon arrival at the Detention Facility, he repeatedly received medical treatment as well as a prescription for oxygen use. But neither medical provider diagnosed sleep apnea as a serious risk to Mr. Garcia's health or safety, nor did either medical provider prescribe the use of a CPAP machine. Apart from another conclusory complaint that the prison put

---

pp 6, ¶ 2 & 7, ¶ 1). The prior suit was dismissed for failure to prosecute, *see id.*, ECF 74 (Dec. 2, 2020), although Mr. Garcia has recently filed a motion to consolidate that closed case with this one a "similar" case. *Id.*, ECF 94, at 1. To the extent necessary, the Court may consider the nature of Mr. Garcia's prior lawsuit on a Rule 12 motion to dismiss. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

him on an oxygenator rather than an oxygen tank (with no allegation as to a material difference between the two or any injury stemming therefrom), Mr. Garcia's complaint presupposes that the Detention Facility followed the actual diagnosis and prescription provided by the medical service providers. Likewise, there is no allegation that the Adams County Defendants did not take Mr. Garcia to receive medical treatment or refer Mr. Garcia to the medical unit every time he requested. Mr. Garcia's real complaint, therefore, is that he did not get the medical treatment he wanted, and that complaint lies solely with the medical provider.

Third, at some point prior to his current incarceration, Mr. Garcia lost his CPAP machine. That means that the daily use of a CPAP machine was not a medical necessity because Mr. Garcia did not use one for some period prior to his incarceration. As pointed out by Deputy Spillis in one of the Inmate Request Forms attached to the amended complaint, officers were also aware that Mr. Garcia did not use such a machine while he was fleeing from authorities. (ECF 14 at 18.) Thus, the Adams County Defendants had no subjective reason to think that Mr. Garcia's claimed need for a CPAP machine actually posed a substantial risk of serious harm. Even so, the Detention Facility was nevertheless willing to accommodate a CPAP machine if Mr. Garcia or his family provided one. But they never did. Instead, Mr. Garcia wants the County to buy him a replacement machine (and without a prescription for one) merely because Mr. Garcia demands one.

In short, if allowed to proceed based on the facts as alleged, Mr. Garcia's Due Process claim would potentially force Counties to pay for voluntary medical devices solely because the inmate demands one. But no such Eighth Amendment or Fourteenth

Amendment right has ever been recognized. And any such ruling it would be inconsistent with established precedent holding that prisoners are not entitled to the medical treatment of their choice. Thus, the Adams County Sheriff's policy regarding CPAP machines is not actionable under *Monell* and no individual Adams County Defendant should be personally liable for following it.

### IV. Deputy Chief Laws and Deputy Spillis Have Qualified Immunity from Suit in their Personal Capacities.

Qualified immunity shields government officials from Section 1983 damages suits so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When governmental officials assert qualified immunity, they create a rebuttable presumption of immunity from the plaintiff's Section 1983 claim. *See Medina v. Cram*, 252 F.3d 1124, 1129 (10th Cir. 2001). The plaintiff then bears the "heavy" burden of establishing that qualified immunity does not apply. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).

The qualified immunity analysis has two elements: (1) Whether, under the facts alleged by the plaintiff, the government officials violated a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the defendants' alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2008). Courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Id.* Additionally, where a Section 1983 defendant raises the defense of qualified immunity, the burden shifts to the plaintiff to show that the defendant violated a constitutional right

13

that was clearly established at the time of the alleged unlawful activity. *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, (2009)).

In this case, and as noted above, Mr. Garcia cannot maintain a Fourteenth Amendment claim for deliberate indifference to a serious medical need. Even assuming, however, that Mr. Garcia has adequately alleged a constitutional violation, he will be unable to establish that such a right was clearly established at the time of his alleged injury. "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Archuleta*, 523 F.3d at 1283. Clearly established law should not be defined "at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Rather, the dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Id.* If the plaintiff fails to satisfy any part of the qualified-immunity inquiry, "the court must grant the defendant qualified immunity." *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).

Here, Mr. Garcia will be unable to point to any Supreme Court or Tenth Circuit precedent that holds a prisoner is entitled to a County-provided CPAP machine to treat sleep apnea. Nor is there any weight of authority from other circuits to that effect. Division Chief Laws and Deputy Spillis had no basis, let alone a clearly-established basis, to believe that Mr. Garcia was entitled to a County-provided CPAP machine. As such, they are entitled to qualified immunity and should be dismissed with prejudice from the case.

## CONCLUSION

The Fourteenth Amendment to the United States Constitution does not require counties to provide prisoners with the medical treatment of their choice. The denial of Mr. Garcia's demand for a County-provided CPAP machine does not rise to the level of a constitutional violation and Division Chief Laws and Deputy Spillis are entitled to qualified immunity. As such, Mr. Garcia's complaint against the Adams County Defendants should be dismissed with prejudice.

DATED: October 14, 2021

Respectfully submitted,

*s/ Michael A. Sink*
Michael A. Sink
Assistant County Attorney
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone: (720) 523-6116
Fax: (720) 523-6114
msink@adcogov.org
*Counsel for Defendants Adams County,*
*Adams County Commissioners, Adams County*
*Sheriff's Office, Adams County Detention*
*Facility, Chris Laws, and Jason Spillis*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2021, I caused the forgoing to be electronically filed with the Clerk of the Court using the CM/ECF system; I further certify that I sent a copy of the foregoing to *pro se* Plaintiff Alexander Garcia via U.S. mail, postage prepaid, to:

Alexander Garcia
21-966
Adams County Detention Facility
150 N. 19th Avenue
Brighton, CO 80601


*s/ Michael A. Sink*
Michael A. Sink
Assistant County Attorney
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone: (720) 523-6116
Fax: (720) 523-6114
msink@adcogov.org
*Counsel for Defendants Adams County, Adams County Commissioners, Adams County Sheriff's Office, Adams County Detention Facility, Chris Laws, and Jason Spillis*